**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-13-0001761**
**27-AUG-2014**
**07:56 AM**

NO. CAAP-13-0001761

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

CIVIL NO. 08-1-0996

BETSY AKIKO MORIOKA,
Plaintiff-Appellee,
v.
KIMBERLY ANN EIKO LEE and DANIEL MORRIS LEE,
Defendants/Cross-Claim Plaintiffs/Plaintiffs/Appellants
and
HAWAII STATE FEDERAL CREDIT UNION,
Defendant/Cross-Claim Defendant/Appellee,
and
CITY AND COUNTY OF HONOLULU,
DEPARTMENT OF BUDGET AND FISCAL SERVICES,
Defendants-Appellees,
and
JOHN AND JANE DOES 1-20, DOE CORPORATIONS 1-20,
DOE GOVERNMENT UNITS 1-20, and DOE ENTITIES 1-20,
Defendants

CIVIL NO. 08-1-1280

KIMBERLY ANN EIKO LEE and DANIEL MORRIS LEE,
Plaintiffs-Appellants,
v.
BETSY AKIKO MORIOKA,
Defendant-Appellee,
and
JOHN DOES 1-10, JANE DOES 1-10, DOE PARTNERSHIPS 1-10,
DOE CORPORATIONS 1-10, and DOE GOVERNMENTAL ENTITIES 1-10,
Defendants

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NOS. 08-1-0996 and 08-1-1280)

MEMORANDUM OPINION
(By: Foley, Presiding J., Reifurth and Ginoza, JJ.)

Defendants/Cross-Claim Plaintiffs/Plaintiffs/ Appellants Kimberly Ann Eiko Lee (**Kimberly**) and Daniel Morris Lee (**Daniel**) (collectively, **the Lees**) appeal from the following, all filed in the Circuit Court of the First Circuit[1] (**circuit court**):

(1) the April 25, 2012 "Orders Re: 1) Granting in Part and Denying in Part [the Lees'] Motion for Stay of Enforcement of Court's November 8, 2010 Oral Ruling and Subsequent Order and Judgment Pending Appeal; and 2) Granting Betsy Morioka's Motion to Amend Order Granting in Part and Denying in Part [the Lees'] Motion for Stay of Enforcement of Court's November 8, 2010 Oral Ruling and Subsequent Order and Judgment Pending Appeal and/or Motion to Expunge Lis Pendens" (**Orders Re: Stay of Enforcement**);

(2) the April 25, 2012 "Second Amended Order Granting in Part and Denying in Part Betsy Morioka's Motion to Dismiss and/or for Summary Judgment Filed on July 22, 2010" filed on April 25, 2012 (**Second Amended Order**);

(3) the April 25, 2012 "Order Granting Betsy Akiko Morioka's Motion to Amend Order Granting in Part and Denying in Part Betsy Morioka's Motion to Dismiss and/or Motion for Summary Judgment Filed on July 22, 2010" (**First Order**); and

(4) the June 27, 2013 "Amended Judgment Re: Order Granting in Part and Denying in Part Betsy Morioka's Motion to Dismiss and/or for Summary Judgment, Filed on July 22, 2010, and Interlocutory Decree of Partition" (**Amended Judgment**).

On appeal, the Lees contend the circuit court erred by:

(1) failing to apply the applicable law and standards in its ruling on Plaintiff/Defendant/Appellee Betsy Akiko Morioka's (**Betsy**) July 22, 2010 Motion to Dismiss and/or for Summary Judgment (**Motion to Dismiss/Summary Judgment**);

(2) granting the Motion to Dismiss/Summary Judgment under the standards of a Hawai'i Rules of Civil Procedure (**HRCP**) Rule 12(b) motion; and

(3) improperly addressing various claims made by the

---

[1]     The Honorable Karen T. Nakasone presided, beginning October 31, 2011.  The Honorable Rom A. Trader presided prior to October 31, 2011.

2

Lees in their Complaint, Civil No. 08-1-1280, filed June 25, 2008 (**Lees' Complaint**).

## I.  BACKGROUND

Betsy is Kimberly's mother and Daniel's mother-in-law. This case arises from a dispute between Betsy, on one hand, and Kimberly and Daniel, on the other, over the terms of an oral agreement and whether Kimberly and Daniel are entitled to 50%, as Betsy contends, or 100%, as Kimberly and Daniel contend, of a family residence.  Betsy brought an action to partition the property.  The Lees, in turn, brought suit asserting claims for specific performance (Count I), promissory estoppel/part performance/detrimental reliance (Count II), breach of oral contract (Count III), fraud and misrepresentation (Count IV), unjust enrichment (Count V), conversion (Count VI), intentional and/or negligent infliction of emotional distress (**IIED/NIED**) (Count VII), punitive damages (Count VIII), and for restitution and/or reimbursement (Count IX).

Based on summary judgment rulings, the circuit court entered judgment in favor of Betsy and against the Lees on Betsy's partition action and Counts I-IV and VI-VIII of the Lees' claims.  The Lees appeal concerns two cases consolidated in the circuit court, Civil No. 08-1-0996 and Civil No. 08-1-1280.  This interlocutory appeal is before us pursuant to Hawai'i Rules of Civil Procedure (**HRCP**) Rule 54(b).

In February 1958, Betsy married Roy Likio Morioka (**Roy**) and they had three children, including Kimberly.  Kimberly married Daniel in February 1978 and they had a son.

Prior to 1998, Betsy lived with Roy and Roy's mother, Sumiyo Morioka (**Sumiyo**) in a residence located at 98-062 Lokowai Street, Aiea, Hawai'i 96701 (**Property**).

Betsy had worked as a residential loan officer for the Bank of Hawai'i from 1959-1995; a manager for the O'ahu Educational Federal Credit Union from 1995-2001; a senior loan officer for Mortgage Connections, Inc. from 2001-2007; a loan consultant at Country Wide Home Loans in 2007; and an executive

3

loan officer at P.C.L. Hawai'i also in 2007.

In the latter part of 1997, Betsy approached Daniel and Kimberly with a proposal whereby the Lees would care for Roy and Sumiyo, maintain the Property, and pay certain debts under Betsy's name in exchange for either 100% of Betsy's interest in the Property (according to the Lees) or 50% of Betsy's interest (according to Betsy) (**oral agreement**).

A Uniform Loan Application, approved on November 19, 1997, reflects that Kimberly and Daniel borrowed $160,000 against the Property, with title to be held by Kimberly, Daniel, and Roy, "T/E - Severalty as Whole Joint Tenants."
As of December 1997, the appraised value of the Property was $248,000.

On March 11, 1998, Kimberly, Daniel, and Roy signed a Note promising to pay Lender, Defendant/Cross-Claim Defendant/Appellee Hawaii State Federal Credit Union (**HSFCU**), $160,000 with interest at a yearly rate of 6.56%.

On March 13, 1998, the Lees and Roy settled a debt of $106,609.32 against the Property and the Lees and Roy received $53,540.68 in cash. The Settlement Statement was signed by Daniel, Kimberly, Roy, and Betsy.

On March 18, 1998, Betsy and Roy executed a deed granting Betsy and Roy an undivided ½ interest in the Property and an undivided ½ interest in the same Property to the Lees. Daniel testified that Betsy requested to remain on the title to the Property for tax purposes and that the Lees agreed to this arrangement.

In September 2003, the Lees, Betsy, and Roy encumbered the Property with a Revolving Credit Mortgage (**Property Mortgage**) in favor of HSFCU, which secured a credit line of up to $210,000 for the Lees and Roy. Betsy was not personally obligated to make payments under the terms of an Accommodation Rider.

Roy died on May 9, 2007 and Sumiyo died in July 2007.

In September 2007, Betsy, through her attorney, offered the Lees $250,000 for their alleged 50% interest in the Property, which she stated was valued at $599,500. Under the terms of

Betsy's offer, the Lees would still be responsible for loans and mortgages against the Property.

By letter dated October 9, 2007, the Lees' attorney, responded to Betsy's offer. It was the Lees' understanding that they received clear title to the Property as part of an 1998 agreement whereby they would care for Roy and Sumiyo and pay approximately $106,000 of Betsy's debts. The Lees counter-offered $100,000 to Betsy for her interests in the Property. The Lees' counter-offer represented Betsy's half of the assessed value of the Property minus costs of Property improvements, maintenance, property taxes, wages Daniel lost by quitting his paid employment to care for Roy and Sumiyo, and the Lees' time and labor. Betsy rejected the counter-offer.

By letter dated November 16, 2007, the Lees stated they were attempting to obtain a loan "to amicably resolve this matter with [Betsy]." The Lees submitted a loan application for Betsy's review by facsimile on December 7, 2007.

By Conditional Loan Approval Notice dated January 23, 2008, the Lees were informed they qualified for a $450,000 mortgage. The Lees advised Betsy of the conditional loan approval, a $525 appraisal fee requirement to complete the refinancing, and, referring to an earlier representation that they could provide $200,000 of the approximately $250,000, that payment of the additional $50,000 could be negotiated.

By letter dated February 5, 2008, Betsy informed the Lees that she required an unconditional loan commitment letter and payment of the $50,000 balance within one year at 7% interest evidenced by a promissory note and secured by a second mortgage on the Property.

By letter dated February 13, 2008, the Lees responded that Betsy should be responsible for the $525 appraisal fee; they would pay the $50,000 at the prevailing rate of interest and not 7%; and that a second mortgage was "not obtainable."

By letter dated February 21, 2008, Betsy rejected responsibility for the appraisal fees and stated the 7% interest rate was not negotiable. On March 4, 2008, the Lees responded

they were proceeding with the loan and expected to close within thirty days. On March 12, 2008, Betsy requested further clarification; reiterated her required terms for the conveyance of the Property to the Lees; and advised that she was preparing to litigate the issue.

By letter dated April 7, 2008, the Lees responded they would pay $200,000 for Betsy's interest in the Property and that this $200,000 was "really in addition to the earlier [amount] that was previously paid by the [Lees] to pay off [Betsy's] earlier debts pursuant to the parties' earlier family agreement . . . ." Betsy rejected the Lees' offer.

On May 16, 2008, Betsy filed a Complaint for Partition in Civil No. 08-1-0996 for partition of interests in the Property against the Lees, HSFCU and the City and County of Honolulu Department of Budget and Fiscal Services.

On June 25, 2008, the Lees filed their first complaint alleging claims to Counts I-VIII. On June 21, 2010, in their Motion for Leave to File [a] First Amended Complaint,[2] the Lees added a claim against Betsy for restitution and/or reimbursement (Count IX).

On August 11, 2008, the circuit court entered a Stipulation to Consolidate the two cases.

As of December 14, 2008, the appraised value of the Property was $575,000.

On January 20, 2009, Betsy filed her pretrial statement in which she stated, "[a]ll material facts appear to be in dispute."

In May 2010, Kimberly and Daniel's depositions were taken. Daniel stated:

> Roy confided in me that he wanted to stay together with Betsy because they've been together so long, and I guess she had a better retirement plan or financially she was better off. So he wanted to stay with her because, you know, her money should be his money also because they been married so long, so he wanted to try and keep them together.

---

[2] Upon review of the record, an order granting the Lees leave to file an amended complaint was not found. The circuit court, however, stated that it had granted the Lees' motion to amend and proceeded to address Count IX at the August 19, 2010 hearing.

> But in reality, it wasn't going to work because she was dead
> set on leaving him.

Daniel also stated that in 1997 his brother Robert had a townhouse and was going to help Daniel and Kimberly purchase that townhouse. According to Daniel, Robert said, "Stop looking for a house. I'm going to sell you mine." Daniel accepted Robert's proposal and roughly two weeks later Betsy approached Daniel and Kimberly with the offer to stay in the Property so that she could "move on." Daniel did not want to stay at the Property, but he "saw grandma [Sumiyo] crying and worried about where she [was] going to live, that's when I finally told my wife, 'Let's do it. Let's take care of grandma. It's her house. Her and her husband bought that house. She should live in it till the day she dies.'" Daniel further stated that he, Kimberly, and Betsy, had a conversation at the Property with Sumiyo and Roy present where they accepted Betsy's offer and Betsy stated that she would "take care of it, she'll guide us on what to do and what to get done, and that's how it started." Daniel stated that sometime before March 1998 Betsy asked the Lees if she could be on the title to the Property for tax purposes.

> Well, at first, we questioned why. You know, why does
> [Betsy] need to be on, because the original agreement was
> that her name was going to be off the title and [P]roperty,
> mortgage, everything. It was just going to be the three of
> us, my wife, myself, and Roy.
>
> But came to the point she said, you know, trust her, she
> needs it for tax purposes, everything going be okay. And like for
> myself, I don't understand these things and neither did my wife at
> that time, so we just ended up trusting her.

On July 22, 2010, Betsy filed her Motion to Dismiss/Summary Judgment attaching eleven exhibits, including the Lees' answers to Betsy's request for answers to interrogatories and depositions of Kimberly and Daniel.

On August 19, 2010, the circuit court held a hearing on the Motion to Dismiss/Summary Judgment. At the outset of the proceedings, the circuit court stated that it was "very mindful of the distinctions between the requirements for a motion to dismiss under [HRCP Rule] 12(b)(6) as well as the relevant standards for consideration of the motion for summary judgment."

7

The circuit court noted Roy was still alive when Betsy made her alleged promise to the Lees and asked their attorney whether evidence of Roy's consent would be required for the agreement. The Lees' attorney pointed to deposition evidence that Roy was present at the discussions leading up to the oral agreement; argued the Lees would have named him as a defendant if Roy was alive; and stated that, because Roy died, his interest went to Betsy, who was supposed to convey the interest according to the oral agreement. At the hearing, the circuit court found that no conveyance document other than the March 18, 1998 deed existed and:

> [t]here certainly is no specific evidence that Roy during his lifetime ever specifically consented to a transfer of his interest in that particular Property, and that there certainly is no evidence of any direct discussions with Roy regarding the transfer of his interest or -- in relation to his ultimate estate plans[.]

The circuit court dismissed the Lees' specific performance claim (Count I) on the basis that no genuine issue of material fact existed as to whether Roy consented to the transfer of his interest. In regard to the promissory estoppel/part performance/detrimental reliance claim (Count II), the circuit court found the Lees' reliance unreasonable, "given the fact that it's absolutely clear that Roy continued during his lifetime to make -- to have an ownership interest in the Property." The circuit court also found no genuine issue of material fact in regard to the breach of oral contract claim (Count III) because the "statute of fraud[s] is very clear. Exceptions need to exist to take it outside the statute. The [circuit] court does not believe . . . they exist in this case." The circuit court dismissed the Lees' fraud and misrepresentation claim (Count IV) because "although notice pleading is clearly all that's required [under HRCP Rule 12(b)(6)] when fraud and misrepresentation are advanced as claims [the advancing] party is obligated to prove those with specificity" and the Lees' First Amended Complaint was "woefully defective and inadequate" to place Betsy on notice as to the specifics of that claim. The circuit court also found no genuine issues of material fact as to the conversion claim (Count

8

VI).

The circuit court denied Betsy's motion in regard to the Lees' unjust enrichment claim (Count V) because a genuine issue of material fact existed with Betsy receiving the "benefit of having her hundred and five or six thousand dollar indebtedness repaid[.]  Beyond that, even though it is clear that the Lees did receive a half interest in the [P]roperty that arguably was of greater value than the amount of the debt that was paid for Betsy, it's also clear that the Lees took on some other responsibilities[.]"  Because the circuit court denied Betsy's motion as to the Lees' unjust enrichment claim, it contemplated denying her motion in regard to the Lees' IIED/NIED (Count VII) and punitive damages claims (Count VIII) "because to the extent that the unjust enrichment still remains . . . given the state of the record, the court does not believe that it's absolutely clear that there are no genuine issues of material fact as to those."  The circuit court also denied Betsy's motion in regard to the Lees' claim for restitution and/or reimbursement (Count IX).

The circuit court allowed the parties to submit further briefing on: (1) whether Betsy's partition action could go forward in light of the partial denial of her Motion to Dismiss/Summary Judgment; and (2) the Lees' claims for conversion, IIED/ NIED, and punitive damages regarding their unjust enrichment claim.

On October 19, 2010, the Lees filed a "Motion for Interlocutory Appeal Pursuant to Section 641-1(B), [Hawaii Revised Statutes (**HRS**)]" (**Motion for Interlocutory Appeal**) from the circuit court's order granting in part the Motion to Dismiss/Summary Judgment.  Attached to the Motion for Interlocutory Appeal were the minutes from the August 19, 2010 proceedings in which the circuit court indicated that it would grant in part Betsy's Motion to Dismiss/Summary Judgment.  The Lees also filed a Motion for HRCP Rule 54(b) Certification on October 19, 2010.

On October 29, 2010, the circuit court filed its "Order

9

Granting in Part and Denying in Part the [Motion to Dismiss/Summary Judgment]." The circuit court granted Betsy's motion pursuant to HRCP Rule 56 with respect to the Lees' specific performance (Count I); promissory estoppel/part performance/detrimental reliance (Count II); breach of oral contract (Count III); conversion (Count VI); IIED/NIED (Count VII); and punitive damages (Count VIII) claims. The order further provides, "[t]he motion is granted pursuant to Rules 12(b)(6), 8, and 9 of the [HRCP] and alternatively pursuant to Rule 56, HRCP, with respect to Count IV (Fraud and Misrepresentation). The order denied Betsy's motion with respect to the Lees' unjust enrichment (Count V) and restitution and/or reimbursement (Count IX) claims.

On November 8, 2010, the circuit court held a hearing on the Lees' Motion for HRCP Rule 54(b) Certification, Motion for Interlocutory Appeal, and Betsy's motion to reconsider and/or clarify the circuit court's order granting in part and denying in part the Motion to Dismiss/Summary Judgment.

On November 12, 2010, the Lees filed their Motion for Stay of Enforcement of Court's November 8, 2010 Oral Ruling and Subsequent Order and Judgment Pending Appeal **(Motion for Stay)**.

On November 26, 2010, Betsy filed her opposition to the "(1) [Motion for Stay], and (2) Motion for Waiver of Bond Pending Appeal, Filed on November 12, 2010."

On December 6, 2010, the circuit court held a hearing on the Motion for Stay and took the matter under advisement. The circuit court later granted the Motion For Stay upon the condition the Lees post a supersedeas bond in the amount of $105,000.

On January 6, 2011, the parties filed a Stipulation to Stay Proceedings in Civil No. 08-1-1280 in regard to unjust enrichment (Count V) and restitution and/or reimbursement (Count IX) pending appeal.

On March 10, 2011, the circuit court filed its order granting the Motion for Interlocutory Appeal. On March 18, 2011, the Lees filed their notice of appeal, with this court, from

10

Civil No. 08-1-0996 in case no. CAAP-11-0000165.

On March 24, 2011, Betsy filed a "Motion to Amend Order Granting in Part and Denying in Part [Betsy's Motion to Dismiss/Summary Judgment]. Betsy argued the Lees had exhausted their legal remedies and that partition of the Property could proceed and requested an amendment that would enumerate the rights of the parties and the duties and responsibilities of the commissioner conducting the partition sale.

On March 29, 2011, the circuit court entered its "Order Granting in Part and Denying in Part [Betsy's] Motion to Reconsider and/or Clarify Order Granting in Part and Denying in Part [Betsy's] Motion to Dismiss and/or for Summary Judgment Filed on October 11, 2010." The March 29, 2011 order reflected Betsy as the owner of an undivided one-half fee interest in the Property, the Lees owning the other half, and that an interlocutory decree of partition would be entered "as a partition in kind would be impracticable and a Commissioner shall be appointed . . . and that said Commissioner may sell the [Property] at public auction[.]" Also on March 29, 2011, the circuit court filed its First Amended Order, which reproduced the initial March 29, 2011 order and added a paragraph specifying that it granted the Motion to Dismiss/Summary Judgment on the Lees' specific performance (Count I), promissory estoppel/part performance/detrimental reliance (Count II), oral contract breach (Count III), fraud and misrepresentation (Count IV), conversion (Count VI), IIED/NIED (Count VII), and punitive damages claims (Count VIII).

On April 12, 2011, the circuit court held a hearing on various motions relating to the Motion to Dismiss/Summary Judgment. The circuit court orally ruled that it would grant in part and deny in part the Motion For Stay; and grant Betsy's motion to amend the order granting in part and denying in part the Motion to Dismiss/Summary Judgment to reflect procedures for the appointment of a commissioner to conduct the sale of the Property.

On October 10, 2011, this court dismissed CAAP-11-

11

0000165 for lack of jurisdiction.

On April 25, 2012, the circuit court entered the following orders:

(1) "Judgment Re: Order Granting in Part and Denying in Part [Betsy's] Motion to Dismiss and/or For Summary Judgment Filed on July 22, 2010 and Interlocutory Decree of Partition" in favor of Betsy in regard to an interlocutory decree of partition and Counts I, II, III, IV, VI, VII, and VIII of the Lees' Complaint;

(2) Orders Re: Stay of Enforcement, which granted the Lees' motion for stay of enforcement upon the condition that the Lees not further encumber their 50% ownership interest in the Property, keep the subject Property in good repair, and post a reduced bond in the amount of $105,000 by April 21, 2011 or release the Notice of Pendency of Action;

(3) its First Order, granting Betsy's motion to amend the order granting in part and denying in part the Motion to Dismiss/Summary Judgment ; and

(4) its Second Amended Order, which provided more specific directions for the appointment of a Commissioner and conduct of the sale of the Property and "[p]ursuant to Rule 54(b) of the [HRCP], there is no just reason for delay and the [circuit] court directs the entry of final judgment as to Counts I, II, III, IV, VI, VII, and VIII."

On May 17, 2012, the Lees filed a notice of appeal from Civil Nos. 08-1-0996 and 08-1-1280 in case no. CAAP-12-0000513. The Lees were appealing the Orders Re: Stay of Enforcement, First Order, Second Amended Order, and Judgment, all of which were entered April 25, 2012.

On November 29, 2012, this court dismissed case no. CAAP-12-0000513 based on lack of jurisdiction because the April 25, 2012 judgment did not resolve all claims against all parties in the consolidated cases.

On March 28, 2013, the Lees filed a "Motion for Orders Re: (1) Dismissal Without Prejudice as to Count V (Unjust Enrichment) and Count IX (Restitution), (2) Dismissal of Cross-

12

Claims, and (3) Requested Language for Appeal" (**Motion for Orders**) "In order to satisfy the Hawai'i [Intermediate] Court of Appeals request," the Lees requested dismissal without prejudice as to Count V, IX, and cross-claims of the parties, and specific language in orders and judgments as specified by this court's November 29, 2012 dismissal order.

On April 24, 2013, Betsy filed her position statement regarding the Motion for Orders. Betsy objected to the Lees' motion for dismissal without prejudice as to Counts V, IX, and the cross-claims of parties. She requested that if the Lees' motions were granted, the grant should be conditioned upon the Lees refiling the remaining claims within 30 days of the appellate court's order and/or decision.

On May 2, 2013, the circuit court held a hearing on the Motion for Orders, granting the motion on May 16, 2013. The circuit court dismissed the Lees' Count V and IX complaints and cross-claims without prejudice and provided that they would have 60 days to file and serve an amended complaint upon the filing and service of the appellate decision.

Also on May 16, 2013, the circuit court entered its "Order Granting Oral Motion to Amend Judgment Pursuant to Rule 60(a) of the [HRCP]".[3]

On June 27, 2013, the circuit court entered its Amended Judgment. On July 3, 2013, the Lees filed their notice of appeal with this case.

## II. DISCUSSION

---

[3]     HRCP Rule 60, provides in pertinent part:

**Rule 60. RELIEF FROM JUDGMENT OR ORDER**

        (a) **Clerical mistakes.** Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed, and thereafter while the appeal is pending may be so corrected with leave of the appellate court.

HRCP Rule 60(a).

The Lees contend the circuit court should have reviewed the Motion to Dismiss/Summary Judgment under the HRCP Rule 56 standard for summary judgment. Betsy attached eleven exhibits to her motion, including the Lees' answers to her request for answers to interrogatories and depositions of Kimberly and Daniel. The circuit court was required to treat the Motion to Dismiss/Summary Judgment as a motion for summary judgment under HRCP Rule 56 because "'matters outside the pleading' [were] presented to and not excluded by the court in making its decision on the motion." Rosa v. CWJ Contractors, Ltd., 4 Haw. App. 210, 214, 664 P.2d 745, 749 (1983); see also HRCP Rule 12(b).

We review the circuit court's grant, in part, of summary judgment in favor of Betsy, de novo. Nuuanu Valley Ass'n v. City & Cnty. of Honolulu, 119 Hawai'i 90, 96, 194 P.3d 531, 537 (2008).

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and inferences drawn therefrom in the light most favorable to the party opposing the motion.

Nuuanu Valley Ass'n, 119 Hawai'i at 96, 194 P.3d at 537 (quoting Kahale v. City & Cnty. of Honolulu, 104 Hawai'i 341, 344, 90 P.3d 233, 236 (2004)).

> Furthermore, in deciding a motion for summary judgment, a circuit court must keep in mind an important distinction:
>
> > A judge ruling on a motion for summary judgment cannot summarily try the facts; his role is limited to applying the law to the facts that have been established by the litigants' papers. Therefore, a party moving for summary judgment is not entitled to a judgment merely because the facts he offers appear more plausible than those tendered in opposition or because it appears that the adversary is unlikely to prevail at trial. This is true even though both parties move for summary judgment. Therefore, if the evidence presented on the motion is subject to conflicting interpretations, or reasonable men might differ as to its significance, summary judgment is improper.
>
> Kajiya v. Dep't of Water Supply, 2 Haw. App. 221, 224, 629 P.2d 635, 638-39 (1981) (quoting 10 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 2725 (1973)).

14

Childs v. Harada, 130 Hawai'i 387, 396, 311 P.3d 710, 719 (App. 2013) (concluding the circuit court exceeded its role in adjudicating the motions for summary judgment by drawing disputed inferences from predicate facts to determine the essential fact at issue).

The Lees' second contention is that granting the Motion to Dismiss/Summary Judgment even under the standards of a HRCP Rule 12(b) motion constituted reversible error.[4] "The standard, both at trial and on appellate review, for an HRCP Rule 12(b)(6) motion is more difficult for Defendants to satisfy than the standard for an HRCP Rule 56 motion." Justice v. Fuddy, 125 Hawai'i 104, 108 n.6, 253 P.3d 665, 669 n.6 (App. 2011) (citations omitted).

The circuit court stated it found no genuine issues of material fact, the summary judgment standard, in regard to Counts I, II, III, IV, VI, VII, and VIII of the Lees' Complaint in its various rulings on Betsy's motion. Notwithstanding the circuit court's recitation of the appropriate legal standard, the Lees contend the circuit court erred in its application of this standard by failing "to view all evidence and reasonable inferences in the light most favorable to the Lees" in regard to the existence and terms of the parties' oral agreement.

The Lees further contend the circuit court improperly addressed claims raised in their complaint when it granted the Motion to Dismiss/Summary Judgment.

The circuit court stated it would grant summary judgment to Betsy on the Lees' specific performance claim (Count I) because the Property was held as a tenancy by the entirety and no genuine issue of material fact existed as to whether Roy consented to the transfer of his interest. The remedy of specific performance will be granted where a contract is complete and certain as to the essential and material terms, but if the

---

[4] In its initial order granting in part and denying in part the Motion to Dismiss/Summary Judgment, the circuit court stated it applied HRCP Rule 12(b) and "alternatively, pursuant to Rule 56, HRCP, with respect to Count IV (Fraud and Misrepresentation)."

contract or negotiations of the parties affirmatively disclose or indicate that further negotiations, terms and conditions are contemplated the contract is considered incomplete and incapable of being specifically enforced.  See Wesco Realty, Inc. v. Cameron, 1 Haw. App. 89, 91-92, 614 P.2d 399, 401 (1980).  As alleged by the Lees, the essential and material terms of the oral agreement were: Betsy would deliver 100% of the property to the Lees; the Lees would pay Betsy's debts; and the Lees would care for Roy and Sumiyo.  The means by which Betsy would access Roy's interest were not part of the parties' alleged oral contract. The Lees sought specific performance of this alleged-oral contract also on the basis of their partial performance.

> A party seeking specific performance of an oral contract on the basis of part performance must prove an oral contract, the terms of which are clear, satisfactory, and unequivocal, and that the acts done in part performance were referable solely to the contract sought to be enforced, and not such as might be referable to some other or different contract, and further that nonperformance by the other party would amount to a fraud upon the party seeking specific performance.

71 Am. Jur. 2d Specific Performance § 23 (May 2014).

The Lees testified that an oral contract existed, but they allowed Betsy's name to remain on title to the Property "for tax purposes" and because Betsy said to "trust her" and "everything [was] going [to] be okay."  Seen in a light most favorable to the Lees, issues regarding Betsy's use of her titular entitlement to the Property were not "essential and material terms" of the alleged-oral agreement whereby she would deliver the property to the Lees that would preclude specific performance of the alleged-oral agreement.  Cameron, 1 Haw. App. at 91-92, 614 P.2d at 401.

Summary judgment on a claim for specific performance was unwarranted where a party partially performed and evidence was sufficient to raise disputed issues of fact as to the existence of an oral contract to execute a lease agreement. Island Holidays, Inc. v. Fitzgerald, 58 Haw. 552, 563, 574 P.2d 884, 891 (1978) (citations omitted).  Because we conclude: (1) the Lees' produced evidence of genuine issues of material fact as

16

to the existence of an oral agreement; and (2) Betsy's use of title to the property for tax purposes and the mechanisms by which Betsy would deliver the property to the Lees were not essential and material to the alleged oral agreement; summary judgment on the Lees' specific performance claim was incorrect.

The circuit court granted Betsy summary judgment on the promissory estoppel/part performance/detrimental reliance claim (Count II) because it found the Lees' reliance on the alleged oral agreement unreasonable, "given the fact that it's absolutely clear that Roy continued during his lifetime to . . . have an ownership interest in the [P]roperty." Roy and Betsy held the Property as a tenancy by the entirety, which is characterized by a "unilaterally indestructible right of survivorship, an inability of one spouse to alienate his interest, and, importantly for this case, a broad immunity from claims of separate creditors . . . ." Sawada v. Endo, 57 Haw. 608, 616, 561 P.2d 1291, 1297 (1977) (citation and internal quotation marks omitted). Betsy contends Roy did not consent to transfer his interest and therefore Betsy's alleged promise to convey 100% of the Property to the Lees was "wholly void."

The Lees contend Betsy's succession to Roy's interest upon Roy's death rendered her able to perform her alleged promise to convey 100% of the Property. According to the Lees, "it would not make any difference whether Roy consented or not since any interest he had would have automatically passed on to Betsy by operation of law when he passed away and that all of Betsy's interest in the [Property] would later be given to the Lees pursuant to the oral family agreement." Betsy argues the the Lees' contention is contrary to Sawada, which "held that the [P]roperty was immune from creditors despite the fact that the non-judgment debtor wife had died before Plaintiff attempted to collect the judgment against the judgment debtors husband."

Betsy cited Kimberly and Daniel's deposition testimony that they had not consulted with Roy about his future financial or estate plans as evidence that Roy had not consented to Betsy's performance of the oral agreement. The record contains evidence

17

of Roy's signature on the Property's documents and loan application and the Lees' uncontroverted testimony that Roy was present to the oral agreement and discussions surrounding the agreement and "would be listening to what [Betsy, Kimberly and Daniel] were saying . . . ." Viewed in the light most favorable to the Lees, Roy's participation in the transfer of the Property was evidence of his consent to that transfer and thus could "refute an essential element" of Betsy's defense that the oral agreement was wholly void pursuant to Sawada. See Nuuanu Valley Ass'n, 119 Hawai'i at 96, 194 P.3d at 537.

Betsy contends the Lees had not "relied" upon Betsy's alleged promise when they provided care for Roy and Sumiyo because Kimberly stated she would have cared for them even if Betsy had not promised to convey a 100% ownership interest in the Property and Daniel stated that the primary motivating factor for accepting Betsy's proposal was to alleviate Sumiyo's fear that Betsy would sell the Property and leave her homeless. Betsy misstates the record. At Kimberly's deposition, Betsy's attorneys asked her if "the only circumstance that you would agree to care for your dad if he got ill was if you received something in return[,]" to which Kimberly answered no. Kimberly did not clarify whether and how the extent of her caregiving would have changed if Betsy had only offered a 50% interest in the Property. Even if it were established that the Lees did not rely on Betsy's alleged promise when they performed caregiving services, the Lees' detrimental reliance claim would survive on the potential merits of their allegation that they passed over an offer to negotiate a sale for Daniel's brother's townhouse and that they paid Betsy's approximate $106,000 debt in reliance on that alleged promise.

The Lees contend the circuit court erred by "summarily try[ing] the facts" to find the Lees' reliance unreasonable. (Citing Kajiya v. Dep't of Water Supply, 2 Haw. App. 221, 224, 629 P.2d 635, 638 (1981)). "Once it evaluated and drew disputed inferences from predicate facts to determine the essential fact at issue," consisting here of evidence that Roy held an interest

in the Property and a determination that reliance on Betsy's promise was unreasonable, the circuit court "exceeded its role in adjudicating the motions for summary judgment[.]" Childs, 130 Hawai'i at 397, 311 P.3d at 720. We conclude that the question of whether the Lees reasonably relied upon Betsy's alleged promise to convey 100% of the Property presents a genuine issue of material fact rendering summary judgment inappropriate on Count II.

The circuit court found no genuine issue of material fact regarding the breach of oral contract (Count III), because the "statute of fraud[s] is very clear. Exceptions need to exist to take it outside the statute." A contract for the sale of land falls within the statute of frauds and thus cannot be the subject of an oral agreement. See HRS § 656-1 (1993) and Harrison v. Bruns, 10 Haw. 395, 396 (Haw. Rep. 1896). However, a trial court may relieve a party, who has relied on an oral agreement, of the "hardships of the Statute of Frauds" under certain circumstances:

> (1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce the action or forbearance is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise. The remedy granted for breach is to be limited as justice requires.

> (2) In determining whether injustice can be avoided only by enforcement of the promise, the following circumstances are significant: (a) the availability and adequacy of other remedies, particularly cancellation and restitution; (b) the definite and substantial character of the action or forbearance in relation to the remedy sought; (c) the extent to which the action or forbearance corroborates evidence of the making and terms of the promise, or the making and terms are otherwise established by clear and convincing evidence; (d) the reasonableness of the action or forbearance; (e) the extent to which the action or forbearance was forseeable [sic] by the promisor.

McIntosh v. Murphy, 52 Haw. 29, 36, 469 P.2d 177, 181 (1970)

The Lees claimed they had "given up earlier efforts to purchase property elsewhere, [and expended] time and effort in caring for [Roy and Sumiyo.]" They also expended time and labor in improving the Property in reliance upon the alleged oral agreement. Several equitable remedies were available to avoid injustice without enforcing the alleged promise to convey 100% of the Property, but these remedies raise material facts about the

extent of the Lees' forbearance, amounts of restitution, and the foreseeableness of the Lees' expenditures of labor and monies. Genuine issues of material fact existed as to the Lees' breach of oral contract claim, rendering summary judgment for Betsy on this claim improper.

The Lees' fraud and misrepresentation claim (Count IV) consisted of allegations that Betsy "misrepresented that she needed her name to be on title on the [Property] because of tax purposes" and these representations misled the Lees to induce their "continued compliance with the earlier oral family agreement." The elements of fraudulent inducement are:

> (1) a representation of a material fact, (2) made for the purpose of inducing the other party to act, (3) known to be false but reasonably believed true by the other party, and (4) upon which the other party relies and acts to [his or her] damage.

Matsuura v. E.I. du Pont de Nemours & Co., 102 Hawai'i 149, 163, 73 P.3d 687, 701 (2003) opinion after certified question answered, 330 F. Supp. 2d 1101 (D. Haw. 2004) rev'd and remanded sub nom. Living Designs, Inc. v. E.I. Dupont de Nemours & Co., 431 F.3d 353 (9th Cir. 2005).

Daniel's deposition testimony reflected that the Lees questioned Betsy's reasons for wanting her name to be on the title to the Property, but decided to "trust" Betsy's representations that "everything [was] going to be okay." Viewed in a light most favorable to the Lees, Betsy's more than 40 years experience as a loan officer, her familial relationship to the Lees, and the Lees' relative inexperience with home loans[5] could constitute evidence rendering the Lees' belief reasonable. Whether the Lees "reasonably believed" Betsy would convey 100% interest in the Property notwithstanding putting her name on the title to the Property for tax purposes is a material fact because it would establish an element of the Lees' fraud and misrepresentation claim. We conclude a genuine issue of material

---

[5] Around the time that the alleged oral agreement was made, in November 1997, Daniel worked as a cook in a restaurant and Kimberly was a supervisor in a retail store.

fact existed as to the fraud and misrepresentation claim (Count IV) and the circuit court reversibly erred by granting Betsy summary judgment on this claim.

The circuit court denied the Lees' conversion claim (Count VI). At the August 19, 2010 hearing, the Lees' attorney, argued "to have unjust enrichment would also mean that you've taken the money, which would . . . [be] a conversion . . . ." On appeal, the Lees summarily state the circuit court had "no basis to dismiss this claim" and its ruling should therefore be reversed. The Lees' citation to the trial transcript does not constitute an argument that specific acts by Betsy constituted a form of conversion. See Freddy Nobriga Enterprises, Inc. v. State, Dep't of Hawaiian Home Lands, 129 Hawai'i 123, 129-30, 295 P.3d 993, 999-1000 (App. 2013) (citation and internal quotation marks omitted) ("Conversion encompasses the following acts: (1) A taking from the owner without his consent; (2) an unwarranted assumption of ownership; (3) an illegal use or abuse of the chattel; and (4) a wrongful detention after demand. . . . However, conversion does not require wrongful intent.") Because the Lees provide no argument in support of their contention, we deem this point waived. See Hawai'i Rules of Appellate Procedure Rule 28(b)(7) ("[p]oints not argued may be deemed waived.").

The Lees further contend the circuit court reversibly erred by granting Betsy summary judgment on the IIED/NIED (Count VII) claims and the punitive damages claims (Count VIII). In her declaration, Kimberly and Daniel each alleged Betsy's conduct caused them to experience, inter alia "numerous sleepless nights, inability to sleep, constant worrying about what will not [sic] happen to us, financial strain to us, arguments with [each other], emotional distress . . . nightmares, . . . [agitation], anxiety, mental anguish and feelings of despair." Kimberly believed her blood pressure and weight increased because of the situation with Betsy. Daniel alleged that Kimberly noticed him "consuming alcohol because of the stress."

The elements of a NIED claim consist of: (1) negligent conduct by the defendant; (2) plaintiff's suffered serious

21

emotional distress; (3) defendant's negligent conduct was the legal cause of the serious emotional distress; and (4) physical injury to a person, property, or a mental illness. See Caraang v. PNC Mortgage, 795 F. Supp. 2d 1098, 1122 (D. Haw. 2011) aff'd, 481 F. App'x 362 (9th Cir. 2012) and amended in part, CIV. 10-00594, 2011 WL 9150820 (D. Haw. 2011). The Lees' alleged injuries, such as alleged increased blood pressure and body weight, constituted sufficient physical injury to survive summary judgment on their NIED claim. See Doe Parents No. 1 v. State, Dep't of Educ., 100 Hawai'i 34, 69-70, 58 P.3d 545, 580-81 (2002).

The Lees contend that evidence submitted in support of their fraud and misrepresentation claims also introduced genuine issues of material fact as to whether they were entitled to punitive damages (Count VIII). An award of punitive damages requires "a positive element of conscious wrongdoing . . . . Thus, punitive damages are not awarded for mere inadvertence, mistake, or errors of judgment." Masaki v. Gen. Motors Corp., 71 Haw. 1, 7, 780 P.2d 566, 571 (1989) (citations and internal quotation marks omitted). "Something more than the mere commission of a tort is always required for punitive damages." Id. (citation and internal quotation marks omitted). The Lees' testimony that Betsy deliberately misrepresented her interests in remaining on the title to the Property constitutes substantial evidence of Betsy's alleged fraud or misrepresentation, thus raising a genuine issue material fact regarding whether the Lees' claim merited an award of punitive damages.

### III. CONCLUSION

For the foregoing reasons, we vacate in part and affirm in part the following, all filed in the Circuit Court of the First Circuit:

(1) the April 25, 2012 "Orders Re: 1) Granting in Part and Denying in Part Defendants Kimberly Ann Eiko Lee and Daniel Morris Lee's Motion for Stay of Enforcement of Court's November 8, 2010 Oral Ruling and Subsequent Order and Judgment Pending Appeal; and 2) Granting Betsy Morioka's Motion to Amend Order

Granting in Part and Denying in Part Kimberly Ann Eiko Lee and Daniel Morris Lee's Motion for Stay of Enforcement of Court's November 8, 2010 Oral Ruling and Subsequent Order and Judgment Pending Appeal and/or Motion to Expunge Lis Pendens;"

(2) the April 25, 2012 "Second Amended Order Granting in Part and Denying in Part Betsy Morioka's Motion to Dismiss and/or for Summary Judgment Filed on July 22, 2010;"

(3) the April 25, 2012 "Order Granting Betsy Akiko Morioka's Motion to Amend Order Granting in Part and Denying in Part Betsy Morioka's Motion to Dismiss and/or Motion for Summary Judgment Filed on July 22, 2010;" and

(4) the June 27, 2013 "Amended Judgment Re: Order Granting in Part and Denying in Part Betsy Morioka's Motion to Dismiss and/or for Summary Judgment, Filed on July 22, 2010, and Interlocutory Decree of Partition."

We vacate the grant of summary judgment to Betsy Akiko Morioka on Counts I, II, III, IV, VII, and VIII and affirm the grant of summary judgment in favor of Betsy Akiko Morioka on Count VI. This case is remanded for further proceedings consistent with this opinion.

DATED: Honolulu, Hawai'i, August 27, 2014.

On the briefs:

Gale L.F. Ching
for Defendants/Cross-Claim
Plaintiffs/Plaintiffs/Appellants
Kimberly Ann Eiko Lee and Daniel
Morris Lee.

Eric H. Tsugawa
Tedson H. Koja
(Tsugawa Biehl Lau & Muzzi)
for Plaintiff/Defendant/Appellee
Betsy Akiko Morioka.

Presiding Judge

Associate Judge

Associate Judge